### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
JOHN C. W.                    :    Civ. No. 3:21CV01081(SALM)
                              :
v.                            :
                              :
KILOLO KIJAKAZI, ACTING       :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION       :    August 1, 2022
                              :
------------------------------x
```

### <u>RULING ON CROSS MOTIONS</u>

Plaintiff John C. W. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand for further administrative proceedings. [Doc. #13]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #17]. Plaintiff has filed a reply memorandum in support of his motion to reverse and/or remand. [Doc. #18].

For the reasons set forth below, plaintiff's Motion to Reverse Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #13]** is **DENIED,** and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #17]** is

**GRANTED.**

**I.    PROCEDURAL HISTORY**[1]

Plaintiff filed an application for SSI on August 26, 2016, alleging disability beginning on June 1, 2011.[2] See Certified Transcript of the Administrative Record, Doc. #10, compiled on September 27, 2021, (hereinafter, collectively, "Tr.") at 193-201. Plaintiff's application was denied initially on February 24, 2017, see Tr. 109-12, and upon reconsideration on June 29, 2017. See Tr. 117-19.

On April 20, 2018, plaintiff, represented by Attorney Dennis G. Ciccarillo, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Michael McKenna. See generally Tr. 49-80. On September 12, 2018, the ALJ issued an unfavorable decision (hereinafter the "2018 decision"). See Tr. 8-29. On September 6, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's 2018 decision the final decision of the Commissioner. See Tr. 1-5.

---

[1] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Material Facts, titled "Plaintiff's Statement of Material Facts," Doc. #13-2, to which defendant filed a responsive statement. See Doc. #17-2.

[2] The SSI application and the ALJ's 2021 decision reflect different onset dates. Compare Tr. 1331 (ALJ decision noting alleged onset date of September 5, 2011), with Tr. 193 (SSI application noting alleged onset date of June 1, 2011). Because the onset date does not affect the Court's analysis, the Court refers to the onset date alleged in the SSI application.

On October 11, 2019, plaintiff, represented by Attorney Ciccarillo, filed a Complaint in the United States District Court for the District of Connecticut seeking review of the ALJ's 2018 decision. See John C. W. v. Saul, No. 3:19CV01601(SALM) (D. Conn. Oct. 11, 2019). On February 21, 2020, plaintiff filed a Motion to Reverse the Decision of the Commissioner. See id. at Doc. #20. On April 22, 2020, defendant filed a Motion to Remand to Agency for Reversal and Remand for Further Administrative Proceedings pursuant to 42 U.S.C. §405(g). See id. at Doc. #21. On May 13, 2020, plaintiff filed a response to defendant's motion, asserting, in relevant part, that the ALJ's 2018 decision "should be reversed and remanded for calculation of benefits based on his conditions meeting Listing 12.04 and the absence of evidence that DAA is material." Id. at Doc. #22, p. 6.[3]

The Court held oral argument on the cross motions on May 29, 2020. See id. at Doc. #26. On June 11, 2020, the Court granted plaintiff's motion to reverse, in part, to the extent plaintiff sought a remand for further administrative proceedings, and granted defendant's motion to remand to agency. See id. at Doc. #27. Judgment entered for plaintiff on that same date. See id. at Doc. #28.

---

[3] DAA is an initialism for drug abuse and alcoholism. The Court uses that initialism as applicable throughout this Ruling.

3

On June 22, 2020, the Appeals Council issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. <u>See</u> Tr. 1402-06. On February 19, 2021, the ALJ held a second administrative hearing, at which plaintiff, represented by Attorney Ciccarillo, appeared and testified by telephone. <u>See generally</u> Tr. 1983-2011. Vocational Expert ("VE") Thomas Hardy appeared and testified by telephone at the hearing. <u>See</u> Tr. 2006-10. On April 15, 2021, the ALJ issued a second unfavorable decision (hereinafter the "2021 decision"). <u>See</u> Tr. 1325-53. Plaintiff did not file exceptions to the ALJ's 2021 decision, thereby making the 2021 decision the final decision of the Commissioner. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)

4

(quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially

dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Leslie H. L. v. Comm'r of Soc. Sec. Admin.,</u> No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. <u>See</u> 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]" 42 U.S.C.
§423(d)(1)(A). Such impairment or impairments must be "of such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see
also §416.920(c) (requiring that an "impairment or combination
of impairments ... significantly limit[] ... physical or mental
ability to do basic work activities[]" to be considered
"severe").

There is a familiar five-step analysis used to determine
whether a person is disabled. See 20 C.F.R. §416.920(a)(4). In
the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth

7

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, [s]he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

> Through the fourth step, the claimant carries the
> burdens of production and persuasion, but if the
> analysis proceeds to the fifth step, there is a limited
> shift in the burden of proof and the Commissioner is
> obligated to demonstrate that jobs exist in the national
> or local economies that the claimant can perform given
> his residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum.
Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore
v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The
residual functional capacity ("RFC") is "the most" a person is
still capable of doing despite limitations resulting from his
physical and mental impairments. 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

"[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and quotation marks omitted).

However, "[w]hen there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. §416.935(a)). If the claimant is found disabled, the decision-maker must then determine whether "alcoholism or drug addiction" is a "contributing factor material" to the disability determination, 42 U.S.C. §1382c(a)(3)(J), and whether the claimant would still be disabled if he stopped using drugs or alcohol, see 20 C.F.R. §416.935(b)(1). The claimant "bears the burden of proving that h[is] [substance abuse] is not material to the determination that []he is disabled." Cage, 692 F.3d at 123.

## IV.   **THE ALJ'S 2021 DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff's impairments met the criteria of Listing 12.04 and that he was in fact, disabled, but that his substance use disorders were a contributing factor material to that finding, and, therefore, plaintiff was not "disabled" under the Act. See Tr. 1329, Tr. 1345.

9

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity "since September 5, 2011, the alleged onset date." See Tr. 1331.[4] At step two, the ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, major depressive disorder, anxiety disorder, alcohol use disorder, cocaine use disorder, opioid use disorder, [and] cannabis use disorder[.]" Id. The ALJ found plaintiff's hypertension, hepatitis C, headaches, and right orbital fracture in to be non-severe impairments. See id. At step three, the ALJ determined that plaintiff's impairments, including plaintiff's "substance use," met the requirements of Listing 12.04 (affective disorders) of 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 1332-35.

The ALJ next found that if plaintiff "stopped the substance use, the remaining limitations," including plaintiff's "depression, anxiety, limitations in memory, and limited judgment[,]" "would cause more than a minimal impact on [his] ability to perform basic work activities," and he would therefore "have a severe impairment or combination of

_____

[4] The time period under consideration is from the date of plaintiff's SSI application through the date of the Commissioner's decision. See Juan T. v. Kijakazi, No. 3:20CV01869(SALM), 2021 WL 4947331, at *4 (D. Conn. Oct. 25, 2021); see also 20 C.F.R. §§416.330, 416.335.

10

impairments[.]" Tr. 1335. The ALJ found that if plaintiff
"stopped the substance use, [plaintiff] would not have an
impairment or combination of impairments that met or medically
equaled the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1[.]" Id. The ALJ specifically
considered "the Musculoskeletal Disorder listings with
particular focus" on Listings 1.15 (disorders of the skeletal
spine resulting in compromise of a nerve root) and 1.16 (lumbar
spinal stenosis resulting in compromise of the cauda equina).
Id. at 1335-36. The ALJ also considered "[t]he severity of
[plaintiff's] mental impairments" under Listings 12.04
(affective disorder) and 12.06 (anxiety and obsessive-compulsive
disorders). Tr. 1336.

Before reaching step four, the ALJ found that

if [plaintiff] stopped the substance use, [he] has the
[RFC] to perform light work as defined in 20 CFR
416.967(b) except he can occasionally lift and carry 20
pounds; frequently lift and carry 10 pounds; stand and
walk 6 hours in an 8-hour day; sit for 6 hours in an 8-
hour day; frequently climb ramps and stairs;
occasionally climb ladders, ropes, and scaffolds;
frequently balance; occasionally stoop, kneel, crouch,
and crawl; and can perform simple, routine tasks.

Tr. 1338.

At step four, the ALJ found that plaintiff "is unable to
perform past relevant work." Tr. 1344. At step five, the ALJ
concluded: "If the [plaintiff] stopped the substance use,
considering the [plaintiff's] age, education, work experience,

11

and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the [plaintiff] can perform[.]" Tr. 1344-45.

Ultimately, the ALJ found plaintiff not disabled because his "substance use disorder is a contributing factor material to the determination of disability because the [plaintiff] would not be disabled if he stopped the substance use[.]" Tr. 1345

**V.   DISCUSSION**

Plaintiff seeks reversal and/or remand of this matter on the grounds that: (1) the ALJ erred in his evaluation of the medical opinion evidence, see Doc #13-1 at 6-7, 9-13; (2) the ALJ failed "to properly evaluate the materiality of substance use under Social Security Ruling 13-2p, and substantial evidence does not support a finding of materiality of substance use[,]" id. at 2; (3) substantial evidence does not support the RFC determination, see id. at 18-23; and (4) the ALJ failed "to satisfy the Commissioner's burden at Step 5 of the determination[,]" id. at 23. Defendant generally contends that substantial evidence supports the ALJ's decision. See generally Doc. #17-1. The Court considers each of plaintiff's arguments in turn.

A.   The ALJ Properly Considered the Opinion Evidence

In connection with his argument regarding the ALJ's materiality finding, plaintiff asserts that the ALJ erred in his

12

consideration of the medical opinion evidence. See Doc. #13-1 at
6-7, 9-15. Defendant contends that substantial evidence supports
the weight assigned to the opinions of Dr. Marc Hillbrand and
Dr. Chukwuemeka Efobi. See Doc. #17-1 at 11-14.

1.   *Applicable Law*

The Social Security Act and the regulations applicable to
the evaluation of medical opinion evidence were amended
effective March 27, 2017. Those "new regulations apply only to
claims filed on or after March 27, 2017." Smith v. Comm'r, 731
F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where, as
here, a plaintiff's claim for benefits was filed prior to March
27, 2017, "the Court reviews the ALJ's decision under the
earlier regulations[.]" Poole, 462 F. Supp. 3d at 147 (citation
and quotation marks omitted).

When weighing any medical opinion, treating or otherwise,
the Regulations require that the ALJ consider the following
factors: length of treatment relationship; frequency of
examination; nature and extent of the treatment relationship;
relevant evidence used to support the opinion; consistency of
the opinion with the entire record; and the expertise and
specialized knowledge of the treating source. See 20 C.F.R.
§§416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996
WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL
2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does

not, however, require a "slavish recitation of each and every
factor [of 20 C.F.R. §416.927(c)] where the ALJ's reasoning and
adherence to the regulation are clear." Atwater v. Astrue, 512
F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362
F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

### 2.  Dr. Hillbrand

Plaintiff contends that the ALJ erroneously rejected Dr.
Hillbrand's findings with respect to plaintiff's social
limitations. See Doc. #13-1 at 6-7. Defendant contends that
substantial evidence supports the ALJ's rejection of this aspect
of Dr. Hillbrand's opinion. See Doc. #17-1 at 12.

Dr. Hillbrand conducted a consultative examination of
plaintiff on February 10, 2017. See Tr. 674-76. Dr. Hillbrand
concluded that plaintiff's "ability to interact appropriately
with supervisors, coworkers, and the general public is
moderately impaired." Tr. 676. The ALJ found that

> this opinion is inconsistent with [Dr. Hillbrand's]
> examination. During his examination, he found that the
> claimant had "flat" mood, good hygiene, average speech,
> and a small social support network. He did not document
> more significant objective findings to support a greater
> limitation in social functioning and did not explain his
> reasoning for opining a greater limitation in that area.
> Dr. Hillbrand's opinions are also partially consistent
> with the record. Generally, the mild to moderate
> limitations opined are consistent with the record in
> terms of the claimant's functioning when abstinent from
> the use of substances. The record shows that at the time
> of Dr. Hillbrand's examination, the claimant had a four-
> month history of abstinence. His improved presentation
> during this examination is consistent with the

claimant's presentation to other treatment providers
during periods of abstinence (Exhibit 10F; 13F; 26F). At
those examinations, the claimant presented with
generally normal mental status findings and reported an
ability to engage in a wide range of activities of daily
living[.] ... Notably, during those periods of
abstinence, the claimant reported improvement in
irritability, better control of his temper, and
presented with fair rapport, fair grooming, good eye
contact, normal speech, and cooperative behavior,
consistent with no more than a mild limitation in social
interaction (Exhibit 13F at 10; 25F at 17; 26F).
Accordingly, the opinion of Dr. Hillbrand is given
partial weight.

Tr. 1342-43. The ALJ's findings are supported by substantial
evidence.

First, the record supports the ALJ's finding that Dr.
Hillbrand examined plaintiff during a period of sobriety.
Indeed, Dr. Hillbrand's examination report states that plaintiff
"quit" drinking "on October 21, 2016." Tr. 674; see also Tr. 680
(March 29, 2017, History of Present Illness: Plaintiff "notes he
was at Rushford in October and was actually sober for
approximately 4 months' duration, which is the longest that he
as been sober for some time. However, he states that on his
birthday, which was a month ago, he had a drink and since that
time he has been drinking heavily[.]").

The record also supports the ALJ's finding that during
periods of sobriety, plaintiff experienced, at most, mild
limitations in his social functioning. Mental status
examinations during plaintiff's periods of sobriety reflect that

plaintiff was well-groomed, cooperative, and presented with normal speech and mood. See, e.g., Tr. 743, Tr. 745, Tr. 747, Tr. 749, Tr. 751, Tr. 955, Tr. 1603 (May 15, 2018, Mental Status Evaluation reflecting that plaintiff was "cooperative," with a "fair rapport, good eye contact, fairly-groomed, no psychomotor ... agitation[]"), Tr. 1598 (June 19, 2018, Clinical Notes: Plaintiff "reports that he is doing fine and not having episodes of depression. ... Stated that he is drinking less[.] ... Denies any thoughts about killing self. Improvement in irritability and better control of his temper."). Plaintiff also actively participated in group therapy during times of sobriety, and engaged in social activities such as going to church, and going out to dinner and a movie with his girlfriend. See, e.g., Tr. 742, Tr. 744, Tr. 748, Tr. 750, Tr. 752, Tr. 956.

The ALJ's determination as to plaintiff's social functioning is also supported by the opinion of Dr. Efobi, who opined that plaintiff experienced mild limitations in interacting with others while sober. See Tr 1318. For reasons stated below, the ALJ appropriately assigned Dr. Efobi's opinion great weight. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (An ALJ is permitted to "choose between properly submitted medical opinions[.]").

Plaintiff cites to various records during periods of his sobriety to support a finding that he suffers from moderate

social limitations even when sober. <u>See</u> Doc. #13-1 at 5. Although the record reflects some instances of plaintiff's anger and irritability while sober, plaintiff essentially seeks a reweighing of the evidence in his favor. The Court's role, however, "is not to decide the facts anew, nor to reweigh the facts, nor to substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." <u>Bellamy v. Apfel</u>, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "The fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." <u>Lena v. Astrue</u>, No. 3:10CV00893(SRU), 2012 WL 171305, at *12 (D. Conn. Jan. 20, 2012).

Accordingly, substantial evidence supports the assignment of partial weight to the opinion of Dr. Hillbrand.[5]

_____

[5] To the extent plaintiff asserts that the ALJ did not provide an explanation for the weight assigned to the opinion of Dr. Hillbrand, the Court disagrees. The ALJ's decision adequately explains that partial weight was given to this opinion because: (1) Dr. Hillbrand is an acceptable medical source who examined plaintiff one time; (2) his opinions are partially consistent with examination findings as well as the record; and (3) he did not explain his reasoning for finding that plaintiff had a moderate limitation in social interaction. <u>See</u> Tr. 1342-43.

###### 3.   Dr. Efobi

Plaintiff asserts that the ALJ erred by assigning great weight to the opinion of non-examining medical consultant Dr. Efobi. See Doc. #13-1 at 9. Defendant contends that substantial evidence supports the weight assigned to this opinion. See Doc. #17-1 at 13.

Dr. Efobi completed a medical interrogatory dated July 24, 2018, regarding plaintiff's mental impairments. See Tr. 1314-21. In relevant part, Dr. Efobi concluded that, in the presence of substance abuse, plaintiff had moderate to marked mental limitations. See Tr. 1315. "[A]ssuming that any drug and/or alcohol abuse is ongoing," Dr. Efobi concluded that plaintiff's mental impairments met Listing 12.04. See Tr. 1316. In support of these findings, Dr. Efobi cited to numerous reports in the record. See Tr. 1315-1316.

Dr. Efobi also considered plaintiff's mental impairments when plaintiff's drug and alcohol abuse was in "remission[.]" Tr. 1318. Dr. Efobi concluded that under those circumstances, plaintiff experienced mild mental limitations, with the exception of plaintiff's ability to "[u]nderstand, remember and apply information[,]" in which plaintiff had a mild to moderate impairment. Id. Dr. Efobi again supported these findings with citations to the record. See id. In light of these conclusions, Dr. Efobi opined that, "assuming that any drug and/or alcohol

abuse is in remission," plaintiff's "impairments established by
the medical evidence[]" do not meet a listed impairment. Tr.
1319.

The ALJ assigned Dr. Efobi's opinion "great weight." Tr.
1342. The ALJ noted that "Dr. Efobi is an acceptable medial
source[,]" whose "opinion is well-supported and explained with
specific reference to the medical record." Tr. 1341. The ALJ
further noted:

> While claimant's attorney notes that Dr. Efobi cited to
> some of the same records to support both "marked" and
> "mild" limitation, particularly in exhibit 10F, I note
> that he also provided considerable additional evidence
> to support his opinion (Exhibit 16E; 9F; 16F; 19F). More
> importantly, the record as a whole is consistent with
> his opinion that the claimant demonstrates improved
> functioning when abstinent from the use of substances.

Id. The ALJ also acknowledged that "although Dr. Efobi did not
have the benefit of additional evidence submitted at the present
hearing, ... his assessment remains consistent with the record
as a whole. New evidence shows a similar pattern as described by
Dr. Efobi. ... Accordingly, Dr. Efobi's opined limitations have
remained consistent with the record. His opinion is given great
weight." Tr. 1342.

Plaintiff contends that the ALJ erred by assigning great
weight to Dr. Efobi's opinion because of alleged inconsistencies
in the evidence he relied on to support his opinion. See Doc.
#13-1 at 10-14. Specifically, plaintiff contends that Dr. Efobi

19

cited to the same evidence to find <u>mild</u> mental limitations as he did to find <u>marked</u> mental limitations. <u>See</u> <u>id.</u> at 11. In response, defendant has listed each of the records relied on by Dr. Efobi to support his conclusion that plaintiff suffered only <u>mild</u> mental limitations in the absence of DAA. <u>See</u> Doc. #17-1 at 14-15.

Defendant provides an accurate and detailed list of the substantial evidence on which Dr. Efobi relied to conclude that plaintiff experienced mild mental limitations in the absence of DAA. <u>See</u> Doc. #17-1 at 14-15. Plaintiff does not take issue with this summation in his reply. <u>See</u> Doc. #18. Defendant's summation of the evidence is an accurate reflection of the records relied on by Dr. Efobi to support his opinion that plaintiff experienced mild mental limitations in the absence of DAA. Having reviewed this evidence, the Court agrees that substantial evidence supports Dr. Efobi's findings on this point. <u>See also</u> Section V.B., <u>infra</u> (discussion of evidence supporting ALJ's materiality finding).

To the extent Dr. Efobi relied on some of the same records to support his findings for periods of DAA and sobriety, some of the overlapping records relate to times when plaintiff experienced both DAA and sobriety. <u>See, e.g.,</u> Tr. 718, Tr. 721 (lab reports reflecting negative urine screens); Tr. 734, Tr. 941, Tr. 952, Tr. 998, Tr. 1260 (noting dates of plaintiff's

last alcohol and/or marijuana use); Tr. 738 (noting sustained remission of opioid and stimulant use disorders); Tr. 741, Tr. 745, Tr. 753 (noting "utox" checked/negative). Other records reference the difference in plaintiff's limitations during times of DAA versus sobriety. See Tr. 736, Tr. 888, Tr. 892, Tr. 1216, Tr. 1222, Tr. 1260. Accordingly, these purported discrepancies support, rather than undermine, Dr. Efobi's opinion.

Plaintiff next asserts that the ALJ erred by assigning great weight to Dr. Efobi's opinion because Dr. Efobi did not personally examine plaintiff. See Doc. #13-1 at 15. Although Dr. Efobi did not examine plaintiff, it is well established that "the opinions ... of non-examining sources may ... be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010). Indeed, even "a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision." Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (internal citations omitted). For reasons previously stated, Dr. Efobi's opinion is well supported by the medical evidence of record.

Finally, plaintiff asserts that Dr. Efobi's opinion is stale because he did not have the benefit of reviewing all of the evidence in the record. See Doc. #13-1 at 15. "For

an opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes indicating a claimant's condition has deteriorated over that period." Kelly W. v. Kijakazi, No. 3:20CV00948(JCH), 2021 WL 4237190, at *13 (D. Conn. Sept. 17, 2021). As detailed further in Section V.B., infra, records post-dating Dr. Efobi's opinion reflect patterns similar to those documented in records from 2016 and 2017. See generally Tr. 1606-1942. Nothing in those records raises any doubts as to the reliability of Dr. Efobi's opinion. The ALJ explicitly recognized this in his decision. See Tr. 1342. Accordingly, Dr. Efobi's opinion was not stale. See, e.g., Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) ("No case or regulation ... imposes an unqualified rule that a medical opinion is superseded by additional material in the record, and in this case the additional evidence does not raise doubts as to the reliability of Dr. Kamin's opinion.").

Thus, for the reasons stated, substantial evidence supports the ALJ's assignment of "great weight" to the opinion of Dr. Efobi. Tr. 1342.

B.   Substantial Evidence Supports the ALJ's DAA Materiality Finding

Plaintiff contends that the ALJ's materiality finding is not supported by substantial evidence, and that the ALJ cherry-

picked the evidence to reach his materiality finding. See
generally Doc. #13-1 at 2-9, 15-18.

    "[T]he claimant bears the burden of proving that [his] DAA
is not material to the determination that [he] is disabled."
Cage, 692 F.3d at 123. DAA is material to disability if the ALJ
would not "find [the plaintiff] disabled if [the plaintiff]
stopped using drugs or alcohol." 20 C.F.R. §416.935(b)(1)
(alterations added). "To support a finding that DAA is material"
in the context of a co-occurring mental disorder, the
Commissioner "must have evidence in the case record that
establishes that a claimant with a co-occurring mental
disorder(s) would not be disabled in the absence of DAA." SSR
13-02P, 2013 WL 621536, at *9 (S.S.A. Feb. 20, 2013). DAA will
be found not material where "the evidence does not establish
that the [plaintiff's] co-occurring mental disorder(s) would
improve to the point of nondisability in the absence of DAA."
Id. (alterations added). In considering whether DAA is material,
the ALJ considers periods of abstinence, including the length of
those periods and when they occurred. See id. at *12.

    The record reflects plaintiff's many emergency department
visits and/or inpatient admissions for suicidal ideation. See
Tr. 35, Tr. 437, Tr. 531, Tr. 570, Tr. 708, Tr. 1123-34, Tr.
1185. At the time of each visit or admission, plaintiff was
intoxicated. See Tr. 437 (June 11, 2016, emergency department

record: "pt presents obviously intoxicated. Reports depressed
and wants to die." (sic)); Tr. 531 (September 15, 2016,
emergency department record: "Chief complaint – Suicidal
Ideations[.] ... Admits to 1 pint EtOH, last drink 3 hours
ago."); Tr. 570 (September 7, 2016, emergency department record:
"Per pt, he called girlfriend and said goodbye. Was planning on
hanging self with clothes line when PD arrived. ... Admits to
EtOH." (sic)); Tr. 651 (September 29, 2016, treatment record:
Plaintiff "had suicidal ideation after binge drinking[.]"); Tr.
708 (March 28, 2017, emergency department record: "Last drank 1
hr ago ... Patient brought himself to the hospital tonight
stating that he has been drinking the past three weeks after
being sober for 4 months, having suicidal ideations with plans
to hurt himself, stating he would try all the things that failed
him in the past."); Tr. 1124 (November 4, 2017, emergency
department record: "Patient presents to the emergency department
with complaints of increasing depression and having some
suicidal thoughts. ... He has been drinking tonight, and has
been feeling more depressed and having vague suicidal
thoughts."); Tr. 1188 (March 20, 2018, emergency department
record: "Patient reports feeling suicidal, after he saw a new
psychiatrist today who would not prescribe benzos. Patient is a
history of overdosing on benzos. the patient went home and took
45 15 mg mirtazapine as well as etoh." (sic)); Tr. 35 (August

24

14, 2018, emergency department record: "Patient is a 46-year-old divorced Caucasian male with a history of major depressive disorder and alcohol use disorder who presented to the emergency department intoxicated and reporting suicidal ideation.").

The record also reflects, however, two separate months-long periods when plaintiff abstained from alcohol. See, e.g., Tr. 632 (January 20, 2017, treatment note: "[A]lcohol abuse in remission since November 2016[.]"); Tr. 674 (February 10, 2017, consultative examination: "He quit [drinking] on October 31, 2016. He underwent detox treatment at Rushford. ... He reports no relapses since that date."); Tr. 736 (April 26, 2017, Psychiatric Evaluation: "Patient reports to me now that he is clean and sober after being discharged from the hospital [on March 30, 2017], although he does admit to using on several occasions marijuana."); Tr. 850 (July 19, 2017, treatment note: "He is sober since March 2017."). Mental status examinations of plaintiff during these periods generally reflect normal findings with, at most, mild mental impairments. See, e.g., Tr. 640, Tr. 645, Tr. 735-52, Tr. 762, Tr. 768, Tr. 853, Tr. 884, Tr. 935. Plaintiff did not report suicidal ideation during these periods of sobriety. See generally id.

Records post-dating the ALJ's initial decision reflect patterns similar to those documented in 2016 and 2017. See generally Tr. 1606-1942. For example, in June 2018, at a time

when plaintiff was "drinking less[]" he reported "doing fine and
not having episodes of depression." Tr. 1598. He also denied
"any thoughts about killing self[]" and reported "[i]mprovement
in irritability and better control of his temper." Id. Other
mental status examinations around this time, when plaintiff was
reportedly sober or at least drinking less, reflect normal
psychiatric and/or mental status examinations. See Tr. 1593, Tr.
1603, Tr. 1623, Tr. 1639.

"Taken together, this is relevant evidence that a
reasonable mind might accept as adequate to support the
conclusion, that [plaintiff's mental impairments] ... would
improve [to a point of non-disability] ... in the absence of
DAA." Cage, 692 F.3d at 127. Dr. Efobi's opinion, previously
discussed, also supports this conclusion. See Tr. 1314-21.
Accordingly, substantial evidence supports the ALJ's materiality
finding. See, e.g., Smith v. Comm'r of Soc. Sec. Admin., 731 F.
App'x 28, 30 (2d Cir. 2018) ("Smith's medical records showed
that her depression, anxiety, and bipolar disorder symptoms were
well-managed through medications and that her functioning
improved when she underwent substance abuse treatment.
Additionally, Smith herself reported to her doctors that her
substance abuse made her psychiatric conditions worse and that
she experienced improvements when sober."); Tablas v. Apfel, No.
98CV05430(RMB), 2000 WL 423914, at *4 (S.D.N.Y. Mar. 21, 2000)

("There is substantial evidence in the record to conclude ... that the Plaintiff's alcohol and drug use were contributing factors to his disability[.] ... [T]he medical evidence is replete with references to the Plaintiff's several relapses into alcohol and drug dependence and indications that, when the Plaintiff was not using drugs and alcohol, his mental and physical conditions improved rendering him employable.").

C.    Substantial Evidence Supports the RFC Determination

Plaintiff asserts "that there is neither the required medical opinion, nor substantial evidence, to support the RFC." Doc. #13-1 at 23. Defendant contends that substantial evidence supports the RFC determination. See Doc. #17-1 at 17-20.

The RFC "is what the claimant can still do despite the limitations imposed by his impairment." Greek v. Colvin, 802 F.3d 370, 374 n.2 (2d Cir. 2015) (alteration added); see also 20 C.F.R. §416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§416.945(a)(1), (3) (emphases added). The RFC, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Indeed, where "the record contains sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not

necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (quotation marks and citations omitted).

With respect to plaintiff's mental limitations, the ALJ limited plaintiff to "simple, routine tasks." Tr. 1338. The mental RFC determination is supported by substantial evidence including: (1) the opinion of Dr. Efobi, see Tr. 1318; (2) the opinion of Dr. Hillbrand as to plaintiff's ability to comprehend and carry out complex tasks, see Tr. 675-76; and (3) the numerous normal mental status examinations of record during periods of plaintiff's sobriety, see generally Section V.B., supra.

With respect to plaintiff's physical impairments, the ALJ limited plaintiff to light work, with additional postural limitations. See Tr. 1338. Plaintiff asserts that this finding is not supported by substantial evidence because it is not supported by a medical opinion. See Doc. #13-1 at 21-23.

"Although an ALJ is not free to set his own expertise against that of a physician, the ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner[.]" Negron v. Berryhill, 733 F. App'x 1, 3 (2d Cir. 2018) (citations and quotation marks omitted). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent

28

with the record as a whole." <u>Matta</u>, 508 F. App'x at 56.

Substantial evidence supports the physical RFC determination. First, plaintiff testified that he can "comfortably lift" thirty pounds "without causing any kind of pain in [his] neck or [his] back[.]" Tr. 2004. The record also reflects that plaintiff served as a live-in caretaker for his elderly parents during the relevant time period. <u>See</u> <u>id.</u>; <u>see also</u> Tr. 1797. Indeed, plaintiff represented that he was unemployed <u>not</u> because of his impairments, but because "of his responsibilities to [his] parents[,]" for which he was "trying to get paid as a caretaker[.]" Tr. 1797. The record also indicates that plaintiff helped both his girlfriend and her son move during the relevant time period. <u>See</u> Tr. 918, Tr. 968. This supports the ALJ's finding that plaintiff was capable of at least light work during the relevant time period.

Additionally, many physical examinations of plaintiff's neck and back were unremarkable, or showed only mild impairment, during the time period at issue. <u>See</u> Tr. 1189, Tr. 1290, Tr. 1297, Tr. 1579, Tr. 1586, Tr. 1622, Tr. 1639, Tr. 1685, Tr. 1951. Indeed, in July 2020, plaintiff denied having any neck pain. <u>See</u> Tr. 1622. Other records reflect plaintiff's denial of back pain. <u>See</u> Tr. 632, Tr. 637, Tr. 776, Tr. 1671.

In this case,

although  there  was no medical opinion providing  the

specific restrictions reflected in the ALJ's RFC
determination, such evidence is not required when "the
record contains sufficient evidence from which an ALJ
can assess the [claimant's] residual functional
capacity." <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 F. App'x
29, 34 (2d Cir. 2013); <u>see also</u> <u>Rosa v. Callahan</u>, 168
F.3d 72, 79 n.5 (2d Cir. 1999). Here, the treatment notes
were in line with the ALJ's RFC determinations. And
because [plaintiff] failed to adduce any medical
evidence inconsistent with the ALJ's determinations, the
ALJ was not faced with "any clear gaps in the
administrative record" that gave rise to an affirmative
obligation to seek a medical opinion. <u>See</u> <u>Rosa</u>, 168 F.3d
at 79-80.

<u>Cook v. Comm'r of Soc. Sec.</u>, 818 F. App'x 108, 109-10 (2d Cir.
2020).

Accordingly, substantial evidence supports the ALJ's RFC
determination.

D.   <u>There Is no Step Five Error</u>

Plaintiff contends: "In the absence of an accurate RFC, the
Acting Commissioner has failed to carry her burden of proof of
'no disability' at Step 5[.]" Doc. #13-1 at 24. Defendant
contends that because the RFC is supported by substantial
evidence, and where the hypothetical questions posed to the VE
track the limitations in the RFC, there is no error at step 5.
<u>See</u> Doc. #17-1 at 20. "An ALJ may rely on a vocational expert's
testimony regarding a hypothetical as long as there is
substantial record evidence to support the assumptions upon
which the vocational expert based his opinion, and accurately
reflect the limitations and capabilities of the claimant

involved[.]" <u>McIntyre v. Colvin</u>, 758 F.3d 146, 151 (2d Cir. 2014) (citation and quotation marks omitted); <u>see also</u> <u>Mancuso v. Astrue</u>, 361 F. App'x 176, 179 (2d Cir. 2010) (approving an ALJ's hypothetical that "mirrored [plaintiff's] RFC, which ... was supported by substantial evidence in the record[]"); <u>accord</u> <u>Poole</u>, 462 F. Supp. 3d at 166-67. Here, the ALJ presented the VE with a hypothetical that reflected the ultimate RFC determination. <u>See</u> Tr. 2008-10. As stated, the ALJ properly weighed and considered the evidence of record, and the RFC determination is supported by substantial evidence. Accordingly, the ALJ appropriately relied on the VE's testimony at step five of the sequential evaluation, and there is no error.

**VI. CONCLUSION**

For the reasons set forth herein, plaintiff's Motion to Reverse Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #13]** is **DENIED**, and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #17]** is **GRANTED.**

It is so ordered this 1st day of August, 2022, at Bridgeport, Connecticut.

                           ___/s/_____
                           HON. SARAH A. L. MERRIAM
                           UNITED STATES DISTRICT JUDGE

31